# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VINCENT J. M. BUCKNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-4074-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's application of the legal standard for evaluating credibility, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I. Background

Plaintiff applied for SSD and SSI, alleging disability beginning October 14, 2009. (R. 21, 149-60). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of a final decision denying benefits. He alleges errors in evaluating the medical opinions of record, in evaluating the severity of his mental impairments at steps two and three of the Commissioner's five-step sequential evaluation process, and in evaluating the credibility of his allegations of symptoms resulting from his impairments.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standard was applied. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the administrative law judge (ALJ) erroneously applied the legal standard for evaluating the credibility of Plaintiff's allegations of symptoms. Plaintiff may make further arguments regarding the medical opinions and the severity of his mental impairments in the proceedings on remand.

## II.     Credibility

Plaintiff's credibility argument asserts that one factor relied upon by the ALJ to discount Plaintiff's credibility actually "makes Plaintiff's claim of disability more believable" (Pl. Br. 38), and that "[a] claimant can still be credible, even if [he] engages in some daily activities." (Pl. Br. 39). These assertions seek merely to have the court reweigh the evidence and substitute its judgment regarding credibility for that of the ALJ,

4

a proposition for which the court is without authority. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172. Nevertheless, Plaintiff also argues that the ALJ did not "properly consider the third party statements of Plaintiff's mother" (Pl. Br. 39), and erred by relying upon Plaintiff's failure to consistently take his medication without first considering the four factors of the Frey test. (Pl. Br. 40-41) (citing Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987)). In response, the Commissioner argues that "[a]lthough the ALJ did not discuss [Plaintiff's mother's] report, the ALJ implicitly discounted it for the same reasons that the ALJ found Plaintiff's subjective complaints not entirely credible." (Comm'r Br. 16) (citing Brescia v. Astrue, 287 Fed. App'x 626 (10th Cir. 2008)). The Commissioner also argues that the four-factor Frey test is "only applicable when an ALJ denies benefits solely on the ground that a claimant has failed to follow prescribed treatment," and is not applicable in a case such as this, where an ALJ discusses non-compliance with recommended treatment only when considering credibility. (Comm'r Br. 15) (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The court finds that remand is necessary because of error both in failing to consider the third-party report of Plaintiff's mother, and in failing to apply the four-factor Frey test in the circumstances of this case.

### A. Application of the Frey Test

Where a claimant has failed or refused to pursue treatment or to take medication, the Tenth Circuit provides a four factor test to determine whether that failure or refusal is justified. That test considers: "(1) whether the treatment at issue would restore

5

claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." Frey, 816 F.2d at 517. It is this test which Plaintiff argues the Commissioner erroneously failed to apply. The Commissioner, citing Qualls, argues that the Frey test applies only where the Commissioner is attempting to deny benefits "solely on the grounds that a claimant failed to follow prescribed treatment," and does not apply in a case such as this where the Commissioner is relying on a failure to follow prescribed treatment only to determine whether the claimant's allegations of disabling symptoms are credible. (Comm'r Br. 15). As Plaintiff points out in his reply brief, the Commissioner's argument is foreclosed by Tenth Circuit law. Judge Crow of this court explained in 2002 that the Frey test is applicable both where an ALJ is denying benefits, and where an ALJ is evaluating the credibility of the claimant's allegations. Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1295 (D. Kan. 2002) (citing Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Ragland v. Shalala, 992 F.2d 1056, 1059-60 (10th Cir. 1993)).

The case cited by the Commissioner does not require a different conclusion. The facts in Qualls reveal that Mr. Qualls "took pills his friends gave him," although he did not know what he was taking, and did not indicate the frequency with which this occurred, and he argued that the Frey test should have been applied in his circumstances. Qualls, 206 F.3d at 1372. The Qualls court found the Frey test inapposite "because Frey concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment." Id. The court explained its finding:

6

> The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain--including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

Id. While the Qualls court found the Frey test was not required in that case because the claimant had not refused or failed to follow recommended treatment, the court did not state, as the Commissioner suggests, that the Frey test is never applicable where an ALJ discusses non-compliance with recommended treatment in the context of a credibility determination. Rather, in Qualls, the court found that non-compliance with prescribed or recommended treatment was not at issue, and therefore the Frey test was not required. 206 F.3d at 1372. The court also found no error in the ALJ's determination to discount the plaintiff's credibility because he failed to take medication for severe pain. Id. The court found that despite plaintiff's testimony that "he took pills his friends gave him," the ALJ was correct to find that Mr. Qualls made no attempts to relieve his pain by seeking medical treatment or by taking pain medication. Id.

The significance of Qualls is that it is appropriate not to apply the Frey test in a situation where there has been no recommended or prescribed treatment. And, the agency in such a case may rely upon a claimant's failure to seek treatment or medication for relief of his allegedly disabling symptoms as a factor showing that his allegations are not credible. However, in a case where there has been recommended or prescribed treatment, before an ALJ may rely on a claimant's refusal or failure to comply with that treatment, the Frey test must be applied.

As Judge Crow explained,

> The court has no trouble reading Qualls so as to be consistent with Thompson. The claimant in Qualls argued "that the ALJ erred in relying on plaintiff's failure to take medication for severe pain" because there was evidence that he took pain pills from friends and because the ALJ did not have the evidence necessary to consider the Frey factors. 206 F.3d at 1372. As the Tenth Circuit observed, the credibility issue in Qualls was not whether the claimant had refused to follow prescribed treatment but whether he had attempted to relieve his pain, "including whether he took pain medication." Id. Thus, the panel in Qualls did not consider the rule from Thompson [(the Frey test)], as the ALJ had not denied benefits because the claimant had refused "to follow prescribed treatment." Id.

Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1296 (D. Kan. 2002).

As the Commissioner acknowledges, "Plaintiff's noncompliance with treatment influenced the ALJ's credibility finding." (Comm'r Br. 15). In fact, the ALJ found that "the claimant consistently demonstrated decreased symptoms and overall improvements when he was compliant with his prescribed treatment regimen." (R. 31). It is clear the ALJ relied upon Plaintiff's failure or refusal to follow prescribed or recommended treatment in finding that his allegations of disabling symptoms are not credible. The law requires that before an ALJ may do so, he must apply the four-factor Frey test. Here he did not do so, and remand is necessary for the Commissioner to apply the Frey test if he is to rely upon Plaintiff failure or refusal to follow prescribed or recommended treatment.

### B.     Consideration of Ms. Buckner's Report

The Tenth Circuit has had the opportunity to consider the Commissioner's duty to consider third-party opinion evidence. Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). In Adams, the court "decline[d] claimant's invitation to

8

adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The Adams court found "that the ALJ considered the testimony of claimant's wife in making his decision because the ALJ specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding that testimony. Id. Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects that the ALJ considered that testimony. Blea, 466 F.3d at 915.

In Blea, the plaintiff argued that remand was necessary because the ALJ failed to discuss or consider the lay testimony of the plaintiff's wife. Blea, 466 F.3d at 914. The Commissioner's decision in Blea did not mention any particulars of Mrs. Blea's testimony, and never even mentioned that she had testified regarding the nature and severity of her husband's impairments. Id. at 914. The Commissioner asserted that there was no reversible error because the ALJ is not required to make written findings about each witness's credibility. Id. The court noted that the Commissioner had stated only part of the rule in this circuit and corrected the Commissioner, "[i]n actuality, the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'" Id. at 915 (quoting Adams, 93 F.3d at 715). The Blea court noted that the ALJ had not mentioned Mrs. Blea's testimony or referred to the substance of her testimony anywhere in the written decision, and

9

concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in making his decision." Id. (internal quotation marks, brackets, and citation omitted). Therefore, the case was remanded for the Commissioner to consider Mrs. Blea's testimony properly. Id.

This case more closely reflects the facts presented in Blea than in Adams. As in Blea, the decision in this case did not mention any particulars of Plaintiff's mother's report, and does not even recognize that Plaintiff's mother provided a function report. There is simply no particular indication in the decision that the ALJ considered, or was even aware of, Ms. Buckner's report. This is error. The Commissioner acknowledges that the ALJ did not mention this report, but argues that it was "implicitly discounted" for the same reasons that Plaintiff's allegations were found not credible. (Comm'r Br. 16) (citing Brescia v. Astrue, 287 Fed. App'x 626 (10th Cir. 2008)). The Commissioner's argument has a certain appeal, and if this were the only error in the ALJ's credibility determination, the court would likely find that Ms. Buckner's report was largely cumulative of Plaintiff's allegations and that any error in failing to specifically discuss it was harmless. However, the ALJ also failed to apply the Frey test in this case.

> Because a credibility assessment requires consideration of all the factors "in combination," [] when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) (emphasis in original)(quoting Huston, 838 F.2d at 1132 n.7 (citation omitted)). Since the

10

Commissioner erred both in failing to apply the Frey test to Plaintiff's noncompliance with treatment and in considering Ms. Buckner's report, remand is necessary for the Commissioner to evaluate the credibility of Plaintiff's allegations after a proper consideration of all of the relevant factors in combination.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 3rd day of January 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**